## ATCHISON, T. & S. F. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

### No. 1,610.

1. MASTER AND SERVANT (§ 13*)—SERVICE ACT—CONSTRUCTION—"PERIOD."

Act Cong. March 4, 1907, c. 2939, § 2, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), prohibits a carrier to require or permit any employé subject to the act to remain on duty for a longer period than 16 consecutive hours, and requires that after an employé has been continuously on duty for 16 hours he shall be relieved, and not permitted to go on duty again until he has had at least 10 consecutive hours off duty, and that no such employé who has been on duty 16 hours in the aggregate in any 24-hour period shall be permitted to continue or again go on duty without having had at least 8 consecutive hours off duty, provided that no operator, train dispatcher, or other employé dispatching train orders shall be permitted to remain on duty for a longer period than 9 hours in any 24-hour period at stations continuously operated night and day, or for more than 13 hours in stations operated only in the daytime. Held, that the word "period," as used in such section, did not mean a continuous cycle of time without intermission, and hence the fact that a telegraph operator employed by a carrier went on duty at 6:30 a. m. and worked until 12 m. was then given an intermission until 3 p. m., and then worked until 6:30 p. m., making in all 9 hours' actual service, but 12 hours from the beginning to the end, did not constitute a violation of the act.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 6, p. 5302.]

2. MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE—TRAIN DISPATCHERS—"EMPLOYÉS."

Train dispatchers, being "employés," are within the protection of the main part of the section giving to all employés "at least eight consecutive hours off duty in each day, counting from some point in the next day, so that it would be impossible for carriers to require of them short service periods spread over the entire 24 hours, giving no opportunity· for real recuperation.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 3, pp. 2369–2377; vol. 8, p. 7649.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the United States against the Atchison, Topeka & Santa Fé Railway Company. Judgment for the United States, and defendant brings error. Reversed and remanded.

The writ of error is to reverse a judgment in favor of defendant in error, against the plaintiff in error, for the sum of One Hundred Dollars, together with costs, entered upon a verdict, upon instruction of the Court, in favor of Appellee on the first, third, fifth and seventh counts of the declaration.

The suit was brought under the Hours of Service Act, approved March 4th, 1907, United States Statutes at Large, Vol. 34, Part 1, · p. 1415, c. 2939 (U. S. Comp. St. Supp. 1909, p. 1170).

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the opinion of Landis, District Judge, on denying defendant's motion for an order directing the jury to return a verdict of not guilty:

In this proceeding the defendant is charged with a violation of the statute which was enacted to limit the hours of labor of railway employés having to do with the movement of trains. The evidence having all been heard, the defendant moves for an order directing a verdict of not guilty. The controversy relates to that provision of the law respecting telegraph operators employed at offices operated continuously day and night. The statute is as follows:

Section 1 enacts that the provisions of the law shall apply to railway common carriers, interstate, and provides that "the term 'employés' * * * shall be held to mean persons actually engaged in or connected with the movement of any train."

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act, to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: Provided, that no operator, train dispatcher, or other employé who by the use of the telegraph or telephone, dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period on not exceeding three days in any week: Provided, further, the Interstate Commerce Commission may after full hearing in a particular case and for good cause shown extend the period within which a common carrier shall comply with the provisions of this proviso as to such case."

The remaining sections provide for the enforcement of the law, the imposition of penalties, and specify exceptions to its operation (which are not material here).

For the United States the claim is that this law forbids the operator's employment for more than 9 hours in any 24-hour period, and requires the employment to be continuous. For the defendant it is contended that the law authorizes the employment of operators 9 hours in the aggregate in any 24-hour period; that the office here is not one "operated continuously night and day;" and, further, that the employés involved "are not persons actually engaged in or connected with the movement of any train" within the meaning of the law.

The facts are as follows: The defendant is a railway common carrier from Chicago to points in states west of the Mississippi river, and has a railroad yard called Corwith, located some distance from the main line in the western part of Chicago. At this yard is a telegraph office where two operators are employed. The day man works from 6:30 o'clock in the morning until 6:30 o'clock in the evening, with 3 hours off duty, from 12 o'clock noon until 3 o'clock in the afternoon. The night man works from 6:30 o'clock at night until 6:30 the next morning, with 3 hours off duty, from 12 o'clock midnight until 3 o'clock a. m. The bulk of the work done by these two men pertains to general railroad business other than the movement of trains. However, during each day and night, one or two freight trains, destined interstate, pull out of Corwith and move west over the rails of the main line. This train movement is in compliance with clearance orders telegraphed in each instance by de-

fendant's division dispatcher to Corwith, and by the operators there taken from the wire and delivered to the train crews.

The court is of the opinion that this office is clearly one "continuously operated night and day" within the meaning of the statute. The manifest purpose was to apply the provisions of the law to all employés having to do with train movement, and knowing that some railway telegraph offices were open only during the daytime, while others were open night and day, Congress inserted as a regulation for the latter class the provision respecting those "continuously operated night and day." It can hardly be that Congress had it in mind by the use of the word "continuously" to place it in the power of a railway company to except a night and day office from the operation of the law by the simple process of closing the office and sending the operator away for a few minutes, or, as in this case, for three hours. Nor does the mere fact that employés are concerned but a trifle with the movement of trains, or are concerned with the movement of but a few trains, except them from the operation of the statute. The language of the law is: "The term 'employés' * * * shall be held to mean persons actually engaged in or connected with the movement of any train."

The remaining question is not so free from difficulty. While the purpose of Congress "to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon" clearly appears from the title of the act, it must be admitted the provision relating to persons engaged in the telegraph service might have been more happily phrased to accomplish that purpose. However, as will be observed from an examination of the whole of sections 1 and 2, it was the object of Congress to place a limit on the time of service of all railway employés having to do with the movement of trains interstate. It also clearly appears from section 2 that it was definitely and distinctly in the legislative mind that there were two classes of such employés, namely, those whose work was continuous and those whose work was intermittent. Accordingly, for the former class, it was provided that the limit should be "sixteen consecutive hours," to be succeeded by 10 consecutive hours off duty, and for the latter class the limit is placed on the aggregate of service, the language being: "No such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty." Then follows the special proviso for persons engaged in the telegraph service: "That no operator, train dispatcher, or other employé who by the use of the telegraph * * * transmits or delivers orders pertaining to or affecting train movements, shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all * * * stations continuously operated night and day, nor for a longer period than thirteen hours * * * in all stations operated only during the daytime, except in cases of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period on not exceeding three days in any week."

The defendant urges that this language should be read as if it were as follows: "That no operator * * * shall be required or permitted to be or remain on duty for more than nine hours in the aggregate in any twenty-four hour period." But the use of the word "period" in the 9-hour provision of the act excludes this construction. "Period" is the antithesis of "aggregate." It implies continuity, unbrokenness, uninterruptedness, as distinguished from "aggregate," which signifies the sum or total or gross amount of separate and distinct particles. Thus reference is made to the "Revolutionary period," the "Reconstruction period," the "twenty-four hour period" (as used in the act itself), each of which expressions has a definite and well-understood meaning, which is diametrically opposed to and which excludes the idea that is the basis of the defendant's claim.

Moreover, immediately preceding the provision under consideration is the language used by Congress in dealing with the same subject as related to railway employés in general, which, as before observed, distinctly provides a limitation on the hours of service in the aggregate, as distinguished from continuous or unbroken service. And in the subsequent provision relating to day

offices, where the service is prohibited for a longer period than 13 hours except in cases of emergency, when 4 additional hours' service in a 24-hour period is allowed, and in the concluding proviso authorizing the Interstate Commerce Commission, for good cause, to extend the period in which the carrier shall comply with the act, the word is used in a sense contrary to the meaning which the defendant argues should be given to it in the 9-hour clause. Can it be that Congress intended the court to give the word as used here a meaning opposed not only to its true import, but opposed as well to the sense in which the word is used elsewhere in the same section?

Being of the opinion that a 24-hour period is 24 consecutive hours, and that a 9-hour period is 9 consecutive hours, my conclusion is that the 9-hour period during which the law authorized the day man to be at work expired at 3:30 p. m., and that, inasmuch as he was required or permitted to be "on duty" three hours thereafter, the law has been violated. And so with respect to the night man.

The defendant's motion for an order requiring the United States to elect one count and proceed thereon is without merit. The language of the statute is plain, and provides that the carrier shall be liable "for each and every violation." This, I take it, means each and every 24-hour period in which the prohibition of the law is ignored.

Let there be an order overruling both motions of the defendant.

Robert Dunlap, Lee F. English, and James L. Coleman, for plaintiff in error.

Edwin W. Sims, U. S. Atty., and James H. Wilkerson, for the United States.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion:

Section 2 of the Hours of Service Act, applicable to plaintiff in error, a common carrier within the meaning of that Act, provides:

"Section 2. It shall be unlawful for any common carrier, its officers, etc., to require or permit any employé subject to this act to be, or remain, on duty for a longer period than sixteen consecutive hours, and whenever any such employé, of such common carrier, shall have been continuously on duty for sixteen hours, he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty.

Provided that no operator, train despatcher or other employé who by the use of the telegraph or telephone despatches, reports, transmits, receives or delivers orders pertaining to, or affecting, train movements, shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places and stations operated only during the daytime, except in case of emergency," etc.

The charge alleged was that plaintiff in error required and permitted Fred Hillhouse, one of its telegraph operators despatching, reporting, transmitting, receiving and delivering orders pertaining to and affecting train movements in interstate commerce, at Corwith, in the State of Illinois, to be on duty in such office, continuously operated day and night, for a longer period than nine hours—the proof showing that he went on duty at 6:30 o'clock A. M., was given an intermission of three hours at 12:00 o'clock Noon, resumed duty at 3:00 o'clock P. M., and went off duty at 6:30 P. M., making in all

nine hours of actual service, but twelve hours from the beginning thereof to the end thereof.

A like charge was made respecting requirements upon one W. E. Sargent and one F. M. Elliott, covering the same hours of service but on different days.

Do these facts prove a violation of the act? The question is raised by appropriate exceptions to the instructions of the Court, and by the refusal of the Court to give instructions offered by the plaintiff in error.

The contention of the Government is, that while in neither of the cases above mentioned was the operator required or permitted to remain on duty for more than nine hours in any twenty-four in the aggregate, such service, within the contemplation of the statute either is to be divided into "two periods," separated by the intermission (for which the statute makes no provision), or is to be considered as "one period," including the intermission, which would make it a period of twelve hours. But manifestly, Congress did not intend that an intermission of three hours, in the middle of the day, should be computed as a part of the employee's service; for the statute was enacted in view of the customs of the land, and the customs of the land do not include such intermissions as a part of the working hours of employees. The position of the Government is therefore reduced to its contention respecting the word "period,"—that "period" is "a term," "a cycle," something "continuous" between a definite beginning and a definite end—whereby, invoking the canon of strict construction in criminal statutes, the period was a period of twelve hours, notwithstanding the intermission.

We cannot concur in this view. The statute was passed with custom as a background. According to custom, nine hours' work unquestionably means nine hours' actual employment, whether broken by an intermission for lunch or on account of some other occasion. According to custom, too, especially in railroading in the new western States, the actual service of employees is divided, necessarily divided, throughout the day, to correspond with the arrival and departure of trains. Certainly, Congress did not intend to override these existing customs; making it necessary either that the railroad company should not give intermissions, or that the employee should be paid notwithstanding the intermissions; and making it necessary at many stations (presumably well known to Congress) that the railroad should either employ a different telegraph operator for every train that came and went (trains on western roads being often more than nine hours apart), irrespective of the fact that the actual service for each train was a very short period of time. The contention of the Government gives to this word "period," all things considered, a highly strained meaning. Disregarding a meaning so strained, and reading the word in connection with the context, and in the light of ordinary custom, we are clear that the acts proven do not constitute an offense within the meaning of the law. And, if it be objected that under this construction of the law, it would be possible for the railroad company to require its operators to give their service for short periods at short

intervals, say every alternate hour, or an hour in every two hours and a half, thus so spreading his actual service over the twenty-four hours that no opportunity would be given for real recuperation, the answer is that no instance of such practice has been brought to our attention, and no such instance is likely, which accounts for the fact that no provision in the Act is made for such instances. When such practice actually occurs, Congress will doubtless provide a cure. A further answer is that despatchers, being "employees," come under the protection of the main part of the section which gives to all employees "at least eight consecutive hours off duty" in each day, counting from some point in the next day.

The judgment of the District Court is reversed and the cause remanded, with instructions to grant a new trial.